**In re E. Stanton KENNEDY, Debtor.**

**Michael J. Daly, Trustee, Plaintiff,**

**v.**

**Nancy B. Kennedy, Defendant.**

**Bankruptcy No. 96–33052.**
**Adversary No. 97–3274.**

United States Bankruptcy Court,
D. Connecticut.

May 22, 2002.

Douglas S. Skalka, Neubert, Pepe & Monteith, P.C., New Haven, CT, for Plaintiff–Trustee.

Robert Slavitt, Slavitt, Connery & Vardamis, Norwalk, CT, for Defendant.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW ON COMPLAINT FOR AVOIDANCE AND RECOVERY OF TRANSFERS

ALBERT S. DABROWSKI, Bankruptcy Judge.

### I.  INTRODUCTION

The captioned adversary proceeding presents a dispute concerning payments made by the Debtor to his spouse. The Debtor's Chapter 7 trustee seeks to recover those payments from the spouse through utilization of certain of the avoidance and recovery powers provided under the Bankruptcy Code and applicable state law.  As set forth in more detail hereafter, judgment shall enter granting, in part, the relief sought by the Plaintiff–Trustee.

### II.  JURISDICTION

The United States District Court for the District of Connecticut has subject matter jurisdiction over the instant adversary proceeding by virtue of 28 U.S.C. § 1334(b);

and this Court derives its authority to hear and determine this proceeding on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1). This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(F) and (H).

## III. FINDINGS OF FACT

The Court's findings of fact are derived from (i) the evidence adduced at trial and (ii) the Court's independent examination of the official record of the instant case and adversary proceeding.

1. On September 9, 1996 (hereafter, the "Petition Date"), creditors of the Debtor, E. Stanton Kennedy, filed an involuntary bankruptcy petition against him under Chapter 7 of the Bankruptcy Code, and on February 24, 1997, this Court entered an Order for Relief on said petition. Thereafter, the Plaintiff, Michael J. Daly (hereafter, the "Trustee"), was appointed as trustee of the resulting bankruptcy estate.

2. Prior to 1997, the Debtor was a licensed and practicing attorney-at-law in the State of Connecticut.

3. At all times relevant to this proceeding, the Debtor maintained a checking account at Shawmut Bank, f/k/a Connecticut National Bank, titled in the name of "E. Stanton Kennedy, Trustee" (hereafter, the "Trust Account"). The Debtor utilized the Trust Account for the deposit and maintenance of the funds of clients and other third persons (hereafter, "Entrusters") held by him in a fiduciary capacity (hereafter, the "Trust Account Funds"). At no time relevant to this adversary proceeding were funds held by the Debtor in a *non-*fiduciary capacity deposited into the Trust Account.[1]

4. In addition to the Trust Account, the Debtor maintained one or more checking accounts which contained funds not held by the Debtor in a fiduciary capacity (hereafter, the "Non–Trust Account(s)").

5. On multiple occasions the Debtor utilized funds from the Trust Account for personal transactions, to the prejudice of certain of the Entrusters (hereafter, the "Victims"). Among those transactions were substantially all of the transfers which are the subject of this adversary proceeding.

6. The Debtor's use of the Trust Account for personal purposes ultimately led to criminal charges of larceny being lodged against him by the State of Connecticut. On November 13, 1997, the Debtor pled guilty to three counts of Larceny in the First Degree pursuant to Sections 53a–119(1) and 122(a)(2) of the Connecticut General Statutes.

7. At all times relevant to this proceeding, the Defendant, Nancy B. Kennedy was the wife of the Debtor.

8. During the four years prior to the Petition Date, the Debtor transferred to the Defendant at least $212,874.87 (hereafter, the "Payments"), of which sum $211,014.87 was transferred from the Trust Account (hereafter, the "Trust Payments"), and $1,860.00 from a Non–Trust Account (hereafter, the "Non–Trust Payments").

9. Prior to the Payments being made, the Debtor and the Defendant entered into an agreement concerning payment of household expenses, under which, *inter alia,* the Debtor was obligated to pay or otherwise transfer to the Defendant the

---

**1.** The testimony of Richard Finkel suggested a *possibility* of non-fiduciary funds in the Trust Account; however, he conceded that there was no evidence suggesting that the Trust Account was anything other than what it purported to be—a trust account established and maintained by a practicing Connecticut attorney solely with funds held as a fiduciary.

sum of $900.00 per week. Throughout the relevant period, the Debtor more than satisfied this obligation by making the Trust Payments.

10. At the time of the Payments, the Debtor had at least two creditors who have allowable claims in this bankruptcy case. The amount owing to those creditors—Lee Vanacore (hereafter "Vanacore") and the Estate of Marion Garrick English (hereafter, the "English Estate")—always exceeded, in the aggregate, the amount of the Payments.

## IV. DISCUSSION—CONCLUSIONS OF LAW

The Trustee's Complaint sets forth six Claims for Relief under the authority of the Bankruptcy Code and applicable state law. However, two of those Claims—those alleging preferential transfers under Bankruptcy Code Section 547 and Section 52–552f(b) of the Connecticut General Statutes—have been formally abandoned by the Trustee. The remaining Claims are those alleging fraudulent transfers under the Bankruptcy Code and Connecticut state law (hereafter, the "Fraudulent Transfer Claims"). Given the unique facts of this proceeding it is necessary to separately analyze the Fraudulent Transfer Claims with respect to the Trust Payments and the Non–Trust Payments.

2. "The trustee may avoid any transfer of an interest of the debtor in property...." 11 U.S.C. § 548(a) (1996).

3. "Transfer' means every mode... of disposing of or parting with an asset or an interest in an asset ...."

4. " 'Asset' means property of the debtor...."

5. A hyper-technical reading of Section 541(d) might appear to support a bankruptcy trustee's avoidance of some aspect of a pre-petition transfer of trust property. One might argue that because Section 541(d) distin-

## A. The Trust Payments.

■ All of the Fraudulent Transfer Claims require proof that the subject transfers consisted of a property interest of the Debtor. This requirement is set out explicitly in Bankruptcy Code Section 548(a);[2] and although no equivalent language appears in the text of either C.G.S § 52–552e(a)(1) or 52–552f(a), reference to the definitions of "asset" and "transfer" at C.G.S. §§ 52–552b(2)[3] and (12)[4] makes plain that avoidance under state law operates only against a debtor's transfer of his own property interests. The Defendant contends, *inter alia*, that the Trustee has failed to prove that the Trust Payments were made with the Debtor's own funds, and as a result they are not avoidable by him. This Court agrees.

■ It is axiomatic that funds held in trust by one person for another do not constitute the beneficial property of the former. Rather, legal title to the trust property is held by the former *as trustee* for the benefit of the latter. Consequently, funds held in trust by a debtor are not property of his bankruptcy estate or, for the specific purposes of Code Section 548 and C.G.S § 52–552f(a), property of the *debtor*. *See Begier v. Internal Revenue Service*, 496 U.S. 53, 58–59, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990) (preferential transfer case); 11 U.S.C. § 541(d).[5] Thus the critical question in this proceeding is

guishes between a fiduciary's *legal* interest and a beneficiary's *equitable* interest, a pre-petition transfer of trust property is a transfer of *some* interest of the debtor-fiduciary in property, *i.e. to the extent of his bare legal title*, and therefore the transfer is avoidable. There are two responses to this type of argument. First and foremost, the U.S. Supreme Court in *Begier*—theoretically confronted with the same argument—did not countenance it, but proceeded to reduce the preference analysis in that case to the question of whether the transferred property had been held in trust immediately prior to its transfer. 496 U.S. at

whether the Trust Payments were made with trust funds. In order to answer that question this Court must look to applicable state law to determine the nature of the Trust Account. *See Sanyo Electric, Inc. v. Howard's Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir.1989); *cf., Butner v. United States*, 440 U.S. 48, 54, 99 S.Ct. 914, 59 L.Ed.2d 136, (1979). Since the Trust Account was established and maintained in Connecticut, and the Trust Payments were made in Connecticut, this Court turns to Connecticut state law for guidance in divining the nature of the Trust Account.

The Connecticut Rules of Professional Conduct require (i) that a lawyer "hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property" and (ii) that "[f]unds... be kept in a separate account...." Conn. R. Prof. Conduct 1.15(a) (1996). To similar effect are Rules 2–27 and 2–28 of the Connecticut Rules for the Superior Court, to wit:

> Consistent with the requirement of Rule 1.15 of the Rules of Professional Conduct each lawyer... shall maintain, separate from the lawyer's... personal funds, one or more accounts accurately reflecting the status of funds handled by the lawyer as fiduciary or attorney, and shall not use such funds for any unauthorized purpose.

Conn. Sup.Ct. R. § 2–27(a) (1996).

> Attorneys shall deposit all funds held in any fiduciary capacity in accounts clearly identified as "trust," "client funds" or "escrow" accounts.... Funds held in trust include funds held in any fiduciary capacity in connection with a representation in Connecticut, whether as trustee, agent, guardian, executor or otherwise.

Conn. Sup.Ct. R. § 2–28(b) (1996).

The Debtor established and structured the Trust Account in a manner ostensibly consistent with the fiduciary requirements imposed upon Connecticut attorneys when handling the monetary property of their clients. That fact creates a powerful presumption that the Trust Account Funds were in fact funds of third parties and not the Debtor.

■ In arguing that the Trust Account Funds were property of the Debtor, the Trustee relies on a line of cases holding that a transfer is made with a debtor's own property where the debtor (i) exercises dominion and/or control over the property, and (ii) the transfer of such property diminished the debtor's estate. *See, e.g., McLemore v. Third National Bank in Nashville (In re Montgomery)*, 983 F.2d 1389 (6th Cir.1993). Although each of these cases is distinguishable on its facts,[6] there are more fundamental weaknesses in the Trustee's argument. While the Debtor certainly exercised dominion over the Trust Account Funds, he was not permitted to do so in his personal capacity, but rather only in the limited, fiduciary capacity agreed to by each person depositing

---

59, 110 S.Ct. 2258. The other response is practical in nature. Assuming that a debtor-fiduciary's pre-petition transfer of bare legal title is avoidable, what of value to the bankruptcy estate could be recovered under Code Section 550? Of what benefit to the estate is the debtor's fiducial legal title without recovery of the corresponding equitable interest, *i.e.* the money itself? Certainly the bankrupt-

cy trustee has no legitimate interest in recovering mere title to the beneficial property of others.

6. *E.g., Montgomery*, 983 F.2d at 1393 ("There is no contention here that the debtors preserved the separate identity of the funds obtained... and there is no contention that any trust, actual or constructive, arose here.").

funds with him. His invasion of the Trust Account was not merely an act of fraud, but rather, constituted a criminal theft in the eyes of the law. A thief does not acquire good title to the property he steals, nor can he convey good title to his transferees. *See, e.g., Scholes v. Lehmann,* 56 F.3d 750, 760 (7th Cir.1995).

■ Further, as the Trustee's authorities acknowledge, dominion/control is not the *sine qua non* of a determination of a debtor's ownership of property for purposes of fraudulent transfer law; the subject transfer must also diminish the assets of the debtor available for distribution to creditors. In this case, if a bankruptcy Order for Relief had entered with respect to the Debtor prior to the Payments having been made, *i.e.* when the Entrusters' funds were still in the Trust Account, the Trust Account would not have been available for distribution to creditors. In other words, the Court concludes that the Trust Account would not have been an asset of a bankruptcy estate, and hence a bankruptcy trustee would not be entitled to liquidate that account for the purpose of general estate distribution. And since the Trust Account Funds would not be part of a hypothetical bankruptcy estate, their pre-petition transfer did not diminish the prospective bankruptcy estate of the Debtor.

A related principle—often termed an "exception" in the Trustee's authorities, *e.g., Montgomery,* 983 F.2d at 1395, further undermines the Trustee's argument. In the context of a preferential transfer, funds given to a debtor and "earmarked" for payment to a particular third party, are not considered to have come within the control of the debtor, and thus the transfer of those funds by the debtor is not viewed

as diminishing the debtor's estate. *E.g., Coral Petroleum Inc. v. Banque Paribas–London,* 797 F.2d 1351, 1356 (5th Cir. 1986). A client's placement of his funds with an attorney is, in essence, a form of earmarking since those funds are placed with the attorney for specific and limited uses.[7]

■ Finally, a holding which recognizes and honors the trust nature of the Trust Account Funds also comports with sound public policy, and furnishes a result in this proceeding which harmonizes law and equity. Under the Trustee's view, the Debtor enjoyed a beneficial interest in the Trust Account Funds despite his criminal acts of dominion over them, and thus he could convey good—yet avoidable—title to a transferee such as the Defendant. If the Trustee's view were correct, he would be able to recover the Trust Payments and make distribution to *all* creditors of the Debtor, not just the Victims. Under the Defendant's—and the Court's—view, the Victims never lost their beneficial interest in the Trust Account Funds, even after their theft and transfer by the Debtor. Such a view preserves for the Victims a right to recover their property in full; it does not, like the Trustee's view, produce an incidental windfall for non-Victim creditors who never had a claim to the funds in the Trust Account.

The unique factual scenario presented in this proceeding, as well as the letter and spirit of applicable federal and state law, compel the Court to conclude that the Plaintiff–Trustee has failed to establish that the Trust Payments were comprised of property in which the Debtor held a

---

7. Indeed, the earmarking which occurs with a debtor-attorney's trust funds provides an even *more* compelling case for a debtor's lack of ownership than traditional earmarking since in the former context an earmarking party places funds with the reasonable expectation of the creation of a *trust* relationship.

cognizable interest at the time of transfer.[8]

## B. The Non–Trust Payments.

Despite the foregoing holding with respect to the Trust Payments, and because $1,860.00 of the Payments—*i.e.* the Non–Trust Payments—were paid from a Non–Trust Account, the Court must now analyze the merits of the Fraudulent Transfer Claims with respect to the Non–Trust Payments. The focus of that analysis can be limited to a consideration of state law since the Non–Trust Payments all occurred more than one year prior to the Petition Date, and therefore do not implicate Bankruptcy Code Section 548(a).[9]

In the Complaint's Third Claim for Relief the Trustee alleges that the Payments were made with "actual intent to hinder, delay or defraud" the Debtor's creditors within the meaning of C.G.S § 52–552e(a)(1) (hereafter, the "Fraudulent Intent Claim"), and in the Fourth Claim for Relief the Trustee alleges that the Debtor made the Payments without receiving "reasonably equivalent value in exchange" within the meaning of C.G.S § 52–552f(a) (hereafter, the "Constructive Fraud Claim").[10]

## 1. Burden of proof.

■ The Trustee has the burden of proving the elements of C.G.S. §§ 52–552e and 52–552f by clear and convincing evidence. *Cf., e.g., Tessitore v. Tessitore,* 31 Conn.App. 40, 42–43, 623 A.2d 496 (1993) (decided under C.G.S. § 52–552 (repealed)).

## 2. Trustee's standing.

■ As is plain from the language of C.G.S. §§ 52–552e, 52–552f and 52–552h, transfer avoidance is available to the Trustee under state law only if he enjoys the status and rights of a creditor. The Trustee's standing as a "creditor" is supplied by Bankruptcy Code Section 544, which, as of the Petition Date, provided in relevant part, as follows:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is *voidable under applicable law by a creditor holding an unsecured claim* that is allowable under section 502 of this title . . . .

11 U.S.C. § 544(b) (1996) (emphasis supplied). Consequently, under Section

---

**8.** The Court found, *supra,* that trust and non-trust funds were not commingled in the Trust Account. Yet even if this Court were to have found commingling, its conclusion would not be affected. Commingling, standing alone, does not undermine a person's beneficial interest in trust property. The Court also notes that as a practical matter the commingling of trust funds occurs on a regular basis when Connecticut attorneys create and maintain an "IOLTA" clients' funds account, as required by law. *See* Conn. R. Prof. Conduct 1.15(d); *see also,* Conn. Sup.Ct. R. § 2–28(c). Within such accounts the funds of multiple clients are certainly commingled, but one could not argue in good faith that the identifiable trust character of such funds is destroyed thereby. *Cf. Phillips v. Washington Legal Foundation,* 524 U.S. 156, 164, 118 S.Ct. 1925, 141 L.Ed.2d 174 (1998) (construing Texas law).

**9.** "The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition . . . ." 11 U.S.C. § 548(a) (1996).

**10.** The Trustee's avoidance rights with respect to fraudulent transfers and obligations are granted by Section 52–552h, which provides in pertinent part that—

> (a) [i]n an action for relief against a transfer or obligation under sections 52–552a— 52–552l, inclusive, a creditor . . . may obtain (1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim . . . .

C.G.S. § 52–552h(a) (1996) (emphasis supplied).

544(b) the Trustee may only exercise the state-law rights of one or more creditors with allowable bankruptcy claims (hereafter, "Actual Creditor(s)"). And given the temporal limitations of C.G.S. §§ 52–552e and 52–552f, a trustee proceeding under Connecticut law has no "standing" to avoid fraudulent transfers unless the record reveals the existence of one or more Actual Creditors whose claims arose *prior* to the date(s) of the subject transfer(s). *See, e.g., Sender v. Simon,* 84 F.3d 1299, 1304 (10th Cir.1996). As found *supra,* the record of this case and adversary proceeding reveals the existence of two Actual Creditors—*i.e.* Vanacore and the English Estate—whose claims arose prior to the Payments. Accordingly, the Trustee enjoys standing to avoid the Non–Trust Payments as fraudulent transfers under Connecticut state law.

### 3. Intent to hinder, delay or defraud creditors.

■ C.G.S. § Section 52–552e(a)(1) provides in relevant part that "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation . . . *[w]ith actual intent to hinder, delay or defraud* any creditor of the debtor . . . ." (emphasis supplied).

There is absolutely no basis in the record of this adversary proceeding to support a finding that any of the Payments were made with fraudulent or obstructionist intent vis-a-vis the Debtor's creditors. Admittedly, the record reveals that when he appropriated the Trust Account Funds which comprised the Payments the Debtor acted with fraudulent—indeed, criminal—intent vis-a-vis the Victims. But the Debtor's intent *in appropriating* the Trust Account Funds neither proves nor implies

anything with respect to his intent vis-a-vis his creditors[11] *in transferring* those funds to the Defendant. Stated somewhat differently, the Debtor's intent was to steal funds from the Victims and use those funds for personal purposes. And although he may have *created* creditors by those acts at that time, his intent in transferring was not to evade them, or pre-existing creditors, but rather to use the stolen funds for his own benefit.

Accordingly, judgment shall enter in favor of the Defendant on the Trustee's Third Claim for Relief.

### 4. Constructively fraudulent transfers.

■ At all relevant times, C.G.S. § 52–552f(a) provided in pertinent part as follows:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a *reasonably equivalent value in exchange* for the transfer or obligation and the debtor was *insolvent* at that time or the debtor became insolvent as a result of the transfer or obligation.

(emphasis supplied).

In analyzing the voidability of the Non–Trust Payments as "transfers" under C.G.S. § 52–552f(a), the Court must focus on the nature of the discrete "exchange" which took place at the time of each of those transfers. As the Court has found, the Debtor entered into an agreement with the Defendant under which he promised to make payments to her for household expense in the amount of $900 per week.

---

11. Since the Debtor stole the funds that comprised the Payments, he could not have transferred the Payments with intent to defraud general non-Victim creditors since those creditors had no legitimate interest in the purloined property of the Victims.

That promise created a "debt" owing to the Defendant (hereafter, the "Household Debt"). Each periodic Payment constituted a separate "exchange" within the meaning of C.G.S. § 52–552f(a). When the Debtor made such Payments, he received in exchange dollar-for-dollar satisfaction to the extent of the Household Debt. Since satisfaction of an antecedent debt is acknowledged by C.G.S. § 52–552d(a) to be "value" for purposes of fraudulent transfer analysis, the individual satisfactions flowing from the Payments provided "reasonably" equivalent value in exchange for those Payments, to the extent of the Household Debt. Critically though, because *Trust* Payments were made in sufficient amount to satisfy the Household Debt in full, no debt satisfaction value is available to support the *Non*–Trust Payments.

The only other form of value suggested by the Defendant was her provision of household and other marital services to the Debtor. The Court rejects this suggestion upon the facts and law of this proceeding. First, the Defendant has failed to provide the Court with any specific accounting of the services upon which she relies. And second, the Defendant's general articulation of the nature of such services leads the Court to conclude that such services were in the nature of those naturally and traditionally exchanged between spouses without consideration, and hence provided no basis of exchange value for purposes of fraudulent transfer analysis.

Since the Defendant did not receive reasonably equivalent value in exchange for the Non–Trust Payments,[12] those Payments are voidable by the Trustee.

**5. Recovery under Code Section 550.**

Under Code Section 550, the property—or value thereof—which is the subject of a transfer avoided by a trustee can be recovered from, *inter alia,* "the initial transferee ... or the entity for whose benefit such transfer was made...." The Defendant was both the initial transferee and the entity for whose benefit the Non-trust Payments were made, and thus recovery can be had from her. Accordingly, judgment shall enter against the Defendant and in favor of the Plaintiff–Trustee on his Fourth Claim for Relief in the amount of $1860.00.

## V. CONCLUSION.

In light of the foregoing, a monetary judgment shall enter against the Defendant on the Plaintiff–Trustee's Fourth Claim for Relief in the amount of $1860.00. In all further respects judgment shall be entered in favor of the Defendant.

12. The Defendant has conceded the Debtor's insolvency in this proceeding.