**IN RE: STILLWATER ASSET BACKED OFFSHORE FUND LTD.**

**Stillwater Liquidating LLC, Appellant,**

**v.**

**SFN Dekalb Holdings LLC and CL–RP Stonecrest LLC, Appellees.**

**16 Civ. 116 (GBD)**

United States District Court, S.D. New York.

Signed January 13, 2017

Douglas Eric Spelfogel, Katherine Rose Catanese, Foley & Lardner, LLP, New York, NY, for Appellant.

David Kent Fiveson, Butler, Fitzgerald, Fiveson & McCarthy, P.C., New York, NY, Richard F. Harrison, Thomas A. Draghi, Westerman, Ball, Ederer, Miller & Sharfstein, L.L.P., Uniondale, NY, for Appellees.

## MEMORANDUM DECISION AND ORDER

GEORGE B. DANIELS, United States District Judge:

Stillwater Liquidating LLC ("Appellant") appeals from a December 7, 2015 Order of the United States Bankruptcy

Court for the Southern District of New York ("Bankruptcy Court"), which denied its motion to find void *ab initio* a February 11, 2013 Georgia court order ("Foreclosure Order") and subsequent transfers of real property. Appellant claims that the Bankruptcy Court erred because the Foreclosure Order and subsequent transfers violated the automatic stay imposed by 11 U.S.C. § 362(a).

For the reasons set forth herein, the Bankruptcy Court Order is AFFIRMED.

## I. Background[1]

Appellant is the Court-approved entity charged with pursuing recoveries on behalf of creditors of Stillwater Asset Backed Offshore Fund Ltd. ("Debtor" or "Offshore Fund") and 11 other related investment funds and those they control (collectively, the "Funds"), including the Stillwater Asset Backed Fund LP ("Onshore Fund").

Appellant alleges that on April 9, 2007, the Onshore Fund loaned $18 million (the "Top Flight Loan") to Top Flight Investment LLC ("Top Flight"), $12.6 million of which Top Flight used to purchase the Hillandale Property in Dekalb County, Georgia. (Br. for Appellant ("Appellant Br."), (ECF No. 10), at 3.)[2] On May 1, 2007, the Debtor and the Onshore Fund entered into a participation agreement ("TFPA"), pursuant to which the Debtor paid $7,200,000 to the Onshore Fund for a 40% participation in all right, title, and interest in the loan. (*Id.* at 4.) The TFPA provided that the Debtor had an "undivided beneficial interest" in the collateral securing the loan, and further provided that the Onshore Fund would hold the collateral "in trust" for the Debtor. (*Id.*)

The Complaint alleges that on January 20, 2010, the Funds transferred substantially all their assets, including the Top Flight Loan, to Gerova Financial Group, Ltd. and related entities (together, "Gerova"). (Compl., ECF No. 11–3, ¶ 49.) The Asset Purchase Agreement represented that Stillwater Capital Partners, Inc. ("SCP") approved the transfer on behalf of the Funds "in its capacity as investment manager." (First Am. Compl., ECF No. 10–2, ¶ 98.) The Funds were promised $540 million in consideration from Gerova, payable in Gerova stock. (Compl. ¶ 51.) Following the January 2010 transfer, Gerova "contributed" its real property interests to a new joint venture, Net Five Holdings LLC. (*Id.* 73.)[3]

Appellant alleges that the Funds never received any tradable stock from Gerova, and that the Funds were left insolvent and unable to pay creditors as a result. (*Id.* ¶¶ 52–53.) Appellant claims that the Funds' assets, including interests that the Debtor and Onshore Fund had in the Hillandale Property, were thereby converted and fraudulently transferred. (Appellant Br., at 3.)

Following the transfer to Gerova, Dekalb County commenced a tax sale against the Hillandale Property due to failure to pay property taxes. On May 3, 2011, FTTD3 purchased the tax deeds on both parcels of the Hillandale Property for $226,000, equal to the total 2010 unpaid

---

1. The following background facts and procedural history are taken from the parties' appellate briefs and attached materials.

2. Appellant alleges that according to a broker's price opinion at the time, the Hillandale Property was worth $39,706,587; however, the property was valued at between $8.3 and $13.3 million as of April 28, 2008, and at

$9,160,000 as of January 19, 2010. (Compl. ¶ 196.)

3. A March 2010 transfer of security deed purported to transfer the Top Flight Loan from Gerova to Net Five at Hallandate, LLC. (First Am. Compl. ¶ 334.)

taxes. On June 22, 2011, the tax deeds were transferred from FTTD3 to EHM. (*Id.* at 7.)

On October 31, 2011, Ponce Collections LLC ("Ponce") became a creditor of Top Flight by purchasing an existing judgment and lien against Top Flight for $22,482.48. On November 8, 2011, Ponce purchased the tax deeds from EHM for $271,232, and EHM then quitclaimed the Hillandale Property back to Top Flight. (*Id.*)

On January 27, 2012, Ponce filed a Petition for Judicial Foreclosure in the Superior Court of Dekalb County, Georgia, initiating a foreclosure proceeding against the Hillandale Property and "all persons known and unknown who may claim an interest in said land" (the "Foreclosure Action"). Ponce alleged that it held a first priority lien on the Hillandale Property for $134,401.86 pursuant to: (i) its status as a Top Flight creditor; (ii) redemption of the Hillandale Property from the tax sale; and (iii) recording of the quitclaim deeds specifying that Ponce had redeemed that property. Ponce requested permission to foreclose on the property to satisfy its first priority lien. On June 29, 2012, Ponce transferred and assigned its interests in the Hillandale Property and the Foreclosure Action to Appellee SFN Dekalb Holdings LLC ("SFN"). (*Id.* at 8–9.)

On October 3, 2012, the Debtor filed its Chapter 11 bankruptcy petition, triggering an automatic stay.[4] On October 11, 2012, SFN moved for final judgment in the Foreclosure Action. On February 11, 2013,

the Georgia state court entered the Foreclosure Order, finding that SFN had a first priority lien against the Hillandale Property in the amount of $166,144.52, plus prejudgment interest, and authorizing SFN to foreclose on the Hillandale Property. (*Id.* at 9.)

On April 2, 2013, SFN held a foreclosure sale and was the only bidder, making a successful bid of $226,309.63. SFN took deed to the property ("Foreclosure Deed"). (*Id.* at 9–10.)

On October 2, 2014, Appellant filed an Adversary Proceeding naming SFN as a party. In December 2014, SFN sold the Hillandale Property to Appellee CL–RP Stonecrest LLC ("CL–RP") for $1.2M. (*Id.* at 11.)

## II. Bankruptcy Court Proceedings

On September 1, 2015, Appellant moved the Bankruptcy Court to find void and without effect: (1) the February 2013 Foreclosure Order; (2) the April 2013 Foreclosure Deed transferring the Hillandale Property from Top Flight to SFN; and (3) SFN's sale of the Hillandale Property to CL–RP. On December 7, 2015, the Bankruptcy Court denied Appellant's motion for reasons stated on the record at a December 3, 2015 hearing.

The Bankruptcy Court found that the Foreclosure Order did not violate any automatic stay imposed by the Debtor's or Gerova's bankruptcies filed in 2012. (Dec. 3, 2015 Oral Arg. Tr. ("Oral Arg. Tr."), ECF No. 14–7.)[5] First, the Bankruptcy

---

4. On August 24, 2012, Gerova Financial Group, Ltd. and Gerova Holdings Ltd. filed for Chapter 15 bankruptcy. *See In re Gerova Financial Group, Ltd.*, No. 12–13641 (MEW); *In re Gerova Holdings Ltd.*, 12–13642 (MEW).

5. The Bankruptcy Court explained that it was only deciding whether the foreclosure sale against the property was either an action "against a debtor" or an action "against the

debtor's property" such that it was barred by the automatic stay that applied in the Debtor's or Gerova's bankruptcy cases. Thus, it was not deciding the extent of the Debtor's current rights in the property, and not deciding whether there is a cause of action against subsequent transferees under fraudulent transfer law. (Oral Arg. Tr., at 26:11–23, 30:7–15.)

Court found that the foreclosure sale did not violate Section 362(a)(3) because, by that point, "neither Gerova nor the Debtor owned any property interest that was implicated by the foreclosure sale." (*Id.* at 26:24–27:2.) Whether or not the Debtor at any time held any interest in the property itself, "the complaint alleges quite clearly that the property interests of the debtor and of Gerova were transferred" prior to the foreclosure sale and were "no longer property of the Debtor or of Gerova." (*Id.* at 25:23–25.) Further, under binding Second Circuit case law, fraudulently transferred property is not property of the bankruptcy estate until it is recovered. (*Id.* at 27:2–11.)[6] *See In re Colonial Realty Co.*, 980 F.2d 125, 127 (2d Cir. 1992).

Second, the Bankruptcy Court found that the foreclosure sale was not a "claim against the debtor" in violation of Section 362(a)(1). The court found that the foreclosure sale "clearly wasn't" an effort to collect on any debts owed by the Debtor or by Gerova, but was instead based on independent obligations relating to the Hillandale Property. (Oral Arg. Tr., at 9:4–7, 29:5–9.) Thus, the court found "no way that the foreclosure case, under *Colonial Realty,* could be interpreted as an action to recover a claim against the debtor." (*Id.* at 12:22–24.)

## III. Legal Standards

### a. Jurisdiction and Standard of Review

District courts have jurisdiction to hear appeals from final orders issued by bankruptcy courts pursuant to 28 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8001(a). Bankruptcy court orders are appealable as final orders if they "finally dispose of *discrete disputes within the larger case.*" *In*

re *Johns–Manville Corp.,* 824 F.2d 176, 179 (2d Cir. 1987) (quoting *In re Saco Local Dev. Corp.,* 711 F.2d 441, 444 (1st Cir. 1983)). Finality in bankruptcy proceedings is more flexible than in ordinary civil litigation "[b]ecause bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings." *In re Chateaugay Corp.,* 880 F.2d 1509, 1511 (2d Cir. 1989).

"A district court functions as an appellate court in reviewing judgments rendered by bankruptcy courts." *In re Adelphia Commc'ns Corp.,* 361 B.R. 337, 346 (S.D.N.Y. 2007). Accordingly, this Court reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *See In re Quigley Co., Inc.,* 449 B.R. 196, 200–01 (S.D.N.Y. 2011).

### b. 11 U.S.C. § 362 Automatic Stay

"The filing of a bankruptcy petition operates as a stay, *inter alia,* of 'the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . or to recover a claim against the debtor that arose before the commencement of the case,' and 'any act to obtain possession of property of the estate.'" *In re Colonial Realty Co.,* 980 F.2d at 130 (quoting 11 U.S.C. § 362(a)). Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "Every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *Chartschlaa v. Nationwide Mut. Ins. Co.,* 538 F.3d 116, 122 (2d Cir. 2008) (citation omitted). "By its

**6.** The Bankruptcy Court also rejected the attempt to characterize the Gerova transfer as a "conversion." (*Id.* at 26:1–10.)

terms, section 362 applies only to debtors, property of the debtor, or property of the estate, and does not apply to stay proceedings against non-debtors." *In re Calpine Corp.*, 365 B.R. 401, 408 (S.D.N.Y. 2007).

▇▇▇ "The policy of [Section 362] is to grant relief to the debtor from creditors, and to prevent the dissipation of the debtor's assets." *S.E.C. v. Wyly*, 73 F.Supp.3d 315, 318 (S.D.N.Y. 2014). At the same time, the reach of the automatic stay is limited by its purposes. *See In re Prudential Lines Inc.*, 928 F.2d 565, 573 (2d Cir. 1991) (internal citations omitted).

## IV. The Foreclosure Order Did Not Violate The Automatic Stay

### a. The Foreclosure Order Was Not An Act to Obtain Property of the Estate

▇▇▇ Appellant first argues that the Foreclosure Order violated Section 362(a)(3) because it was an "act to obtain property of the estate" and was thus barred by the automatic stay.[7] Appellant argues that the TFPA, which states that the Onshore Fund holds the collateral "in trust" for the Debtor's benefit, gives the Debtor an express trust interest in the lien on the Hillandale Property. (Appellant Br., at 16.) Appellant contends that under Second Circuit case law, where trust assets are converted, the beneficiary continues to retain good title to such assets despite later transfers. (*Id.* at 13.) Accordingly, in this case "good title" remained at all times with the Debtor, and the Debtor's share of the lien on the Hillandale Property re-

mained "property of the estate" through the transfers to Gerova and to all subsequent transferees. (*Id.* at 20.) Appellant also argues that *Colonial Realty* is not controlling because it did not involve converted property protected by an express trust. (*Id.* at 13.)

Appellant's attempts to distinguish *Colonial Realty* are unavailing. In that case, the Second Circuit Court of Appeals held that a lawsuit by the Federal Deposit Insurance Corporation ("FDIC") to recover assets alleged to have been fraudulently conveyed by the debtor was an action "to recover a claim against the debtor" and therefore subject to the automatic stay. At the same time, the court also held that fraudulently transferred property "is not to be considered property of the estate until it is recovered." 980 F.2d at 131–32; *see also In re Lehman Bros. Holdings Inc.*, 480 B.R. 179, 192 (S.D.N.Y. 2012) ("it is well settled that property transferred by the debtor is not 'property of the estate' until the debtor succeeds in compelling the property's return"); *In re CBGB Holdings, LLC*, 439 B.R. 551, at 559–60 (Bankr. S.D.N.Y. 2010); *In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005). In the present case, all of the Debtor's interests were transferred prior to commencement of the bankruptcy cases, and there is no allegation the assets were ever recovered. (*See, e.g.*, Compl. ¶ 49) ("all of the Stillwater Assets, including the Real Property Interests ... were transferred to Gerova as part of a so-called combined merger and asset sale.") Accordingly, at

---

**7.** This Court has jurisdiction over this appeal because the Bankruptcy Court Order was a final order that resolved the discrete issue of whether the Foreclosure Order violated the automatic stay, and the Bankruptcy Court has not indicated that it contemplates further proceedings on this issue. *See, e.g., In re Quigley Co., Inc.*, 676 F.3d 45, 51 (2d Cir. 2012) (holding that bankruptcy court order that a

stay applied to a particular party was a final order, and noting that bankruptcy court orders lifting or denying relief from an automatic stay are final for purposes of appeal); *Sharf v. BC Liquidating, LLC*, No. 14-cv-7320, 2015 WL 5093097, at *2 (E.D.N.Y. Aug. 28, 2015) (holding that the denial of a motion to find a violation of the automatic stay was a final order).

the time of the bankruptcy proceedings, the asset was not part of the Debtor's estate and the automatic stay was not violated.

Neither *Garner v. First Nat'l City Bank,* 465 F.Supp. 372 (S.D.N.Y. 1979) nor *Daly v. Kennedy (In re Kennedy),* 279 B.R. 455 (Bankr. D. Conn. 2002) compels a different result here. In *Garner,* the court found that certain individuals engaged in conversion by appropriating shares for their own purposes from companies that they controlled through a "series of complicated transactions," receiving nothing of value in return. *Garner,* 465 F.Supp. at 376, 380. On those facts, the court stated that "[u]nder New York law a corporate officer who applies corporate funds to purposes beyond the scope of his authority converts them." *Id.* at 380. By contrast here, the Funds transacted with an unaffiliated counterparty, Gerova, and exchanged property for Gerova stock; it was only later, when Gerova failed, that the consideration lost value. This fact pattern does not establish conversion under *Garner.*

In *Kennedy,* the Debtor, an attorney, maintained a trust account in which he deposited and maintained the funds of clients and other third persons. The bankruptcy court expressly found that all funds in the trust account were held by the Debtor in a fiduciary capacity. *In re Kennedy,* 279 B.R. at 457. Later, while owing debts to at least two creditors, the Debtor transferred funds from the trust account to his wife. In the subsequent adversary proceeding, the bankruptcy court found that those funds were not property of the Debtor's estate because, as a trustee, he never obtained legal title to the trust property. Rather, "[h]is invasion of the Trust Account was not merely an act of fraud, but rather, constituted a criminal theft in the eyes of the law." *Id.* at 460.

Here, regardless of whatever trust interest the Debtor claims to have obtained through the TFPA, that interest was transferred and did not belong to the Debtor at the time of the bankruptcy proceedings. Unlike in *Kennedy,* here Gerova actually took title to the property through a counterparty transaction and closing. (*See* Oral Arg. Tr., at 26:1–10) ("[e]ven if the beneficiary of the trust continues to have some beneficial interest in the property, that is not the situation here. We don't have a situation here where the debtor kept its participation interest.") Because the Debtor lost any interest it had in the Hillandale Property at the time of the transfer to Gerova, the Foreclosure Order, occurring three years later, did not implicate property of its estate.

### b. The Foreclosure Order Was Not a Claim Against the Debtor

 Appellant next argues that the Foreclosure Order violated Section 362(a)(1) because its effect was to enforce a "claim against the Debtor" during the pendency of the instant bankruptcy proceedings. Appellant asserts that the Second Circuit in *Colonial Realty* agreed that an action to recover fraudulently transferred property "violated the automatic stay because it was a 'claim against the Debtor' under § 362(a)(1) even though there, unlike here, the property transferred was not trust property and thus was 'not property of the estate' for purposes of § 541(a)(3) and thus § 362(a)(3)." (Appellant Br., at 21.) Appellant also claims that courts in this circuit have specifically held that "an action to foreclose a Debtor's interest is a 'claim against the Debtor' for purposes of § 362(a)(1)." (*Id.* at 24.)

Appellant's argument does not withstand scrutiny. The Foreclosure Order and subsequent transfers of the Hillandale Property were completely independent of

any interest Debtor now claims to have. Debtor was not a party to the foreclosure proceedings and held no recorded interest in the foreclosed property, having transferred away all its interests to Gerova three years prior. This case is unlike *Colonial Realty*, in which the Court of Appeals found that an FDIC lawsuit against subsequent transferees of the debtor's funds was "clearly seeking to recover a claim against [the debtor]"; indeed, the FDIC specifically alleged in its complaint that the named defendants were liable as fraudulent transferees of the debtor. *In re Colonial Realty Co.*, 980 F.2d at 132. Nothing of the sort occurred here. Ponce initiated the foreclosure proceedings in January 2012—nearly a year before the Debtor filed its bankruptcy petition—in order to satisfy its first priority lien on the Hillandale Property. In February 2013, the Georgia state court entered the Foreclosure Order upon finding that Appellee SFN—to which Ponce had assigned its interests—had a first priority lien against the Hillandale Property. Two months later, SFN held a foreclosure sale and was the only bidder, thereafter taking deed to the property. As such, "[t]he foreclosure sale was based on independent obligations relating to the property that were entirely unrelated to anything owed or alleged to be owed by the debtor or by Gerova." (Oral Arg. Tr., at 29:5–9.)

Appellant argues that a claim against a debtor can be indirect and includes a claim that adversely impacts property of the debtor, citing *In re Davenport*, 268 B.R. 159 (Bankr. N.D. Ill. 2001) and *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir. 2014). Those cases are easily distinguishable from the present matter. In *Davenport*, the Bankruptcy Court for the Northern District of Illinois determined under Illinois state law that a debtor retained an equitable interest in property that she quitclaimed to her daughter, where the court found that the debtor did not intend to make a gift of the property but was only acting to avoid losing her home. After citing a series of cases involving similar transfers between family members, the court concluded that the debtor's residence was part of her bankruptcy estate and protected by the automatic stay upon her bankruptcy filing. *Id.* at 165–66. That decision has no relevance here, as there is no evidence that the Funds, sophisticated corporate entities, did not intend to transfer their real property interests to Gerova in exchange for stock consideration. As for *Picard*, Appellant is correct that the Second Circuit confirmed the rule from *Colonial Realty* that a third-party action to recover fraudulently transferred property is properly regarded as undertaken "to recover a claim against the debtor" and subject to the automatic stay. *Picard*, 762 F.3d at 209. However, in *Picard* as in the present case, there was no violation of the stay because the third-party actions were not claims to recover fraudulent transfers and were not "legally certain" to impact the debtor's property. Rather, the Court of Appeals found that the third-party lawsuits (against defendants who purportedly received fraudulently transferred property from a debtor in bankruptcy) were "independent of any liability" the debtor may have had and did not "depend in substance" on the debtor's alleged fraudulent transfers. *See id.* at 210–11.

Further, Appellant argues that "courts in this Circuit have held that an action to foreclose a Debtor's interest is a 'claim against the debtor' for purposes of § 362(a)(1)." (Appellant Br., at 24.) For instance, in *In re Ebadi*, 448 B.R. 308, 313–15 (Bankr. E.D.N.Y. 2011), the bankruptcy court held that a foreclosure sale of real property violated the automatic stay where the bankruptcy debtor was a named

**50**

defendant in the foreclosure judgment and a guarantor of the underlying debt, even though he held no ownership interest in the property. *Ebadi* is inapposite here, as the Debtor was not a defendant in the Foreclosure Action nor the guarantor of any debt owed to the foreclosing party.

Finally, Appellant asserts that *In re 48th Street Steakhouse, Inc.,* 835 F.2d 427 (2d Cir. 1987) is "dispositive" on their argument that the Foreclosure Order was a claim against the Debtor. In that case, the Second Circuit found a violation of an automatic stay where a landlord sent a lease termination notice to a tenant to whom the debtor had assigned its lease and then sublet the property. The Court of Appeals held that the sublease constituted property of the bankrupt estate, explaining that "where a non-debtor's interest is intertwined in property . . . with that of a bankrupt debtor . . . [and an] action taken against the non-bankrupt party would inevitably have an adverse impact on property of the bankrupt estate, then such action should be barred by the automatic stay." *Id.* at 431. The Second Circuit has since explained that *48th Street Steakhouse* only automatically stays actions that are "legally certain, to impact estate property," and does not cover actions that are only factually likely. *Picard,* 762 F.3d at 208.

The record in this case belies the claim that the Foreclosure Order was "legally certain" to impact the Debtor's property. Appellant's theory for its purported property interest is far more attenuated than the one posed in *48th Street Steakhouse.*[8] The Debtor was not a party to the foreclosure proceedings, nor did it hold any recorded interest in the property in foreclosure. On this set of facts, Appellant cannot

show that the Foreclosure Order and subsequent transfers would "inevitably" have an adverse impact on the Debtor's property.

### V. Conclusion

Neither the Foreclosure Order nor the subsequent transfers violated any automatic stay. The Bankruptcy Court Order is AFFIRMED. The Clerk of Court is directed to close this bankruptcy appeal.

SO ORDERED.

---

**8.** (*See, e.g.,* Oral Arg. Tr., at 30:1–5) ("There's nothing in [*48th Street Steakhouse*] that suggests that an event such as a foreclosure sale here, that affects property in which a debtor might later claim some recovery right under a fraudulent transfer theory, somehow is subject to the automatic stay.")