Bank of N.Y. Mellon v DeMatteis (2023 NY Slip Op 05242)

Bank of N.Y. Mellon v DeMatteis

2023 NY Slip Op 05242

Decided on October 18, 2023

Appellate Division, Second Department

Connolly

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on October 18, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
FRANCESCA E. CONNOLLY
CHERYL E. CHAMBERS
JANICE A. TAYLOR, JJ.

2022-00522
 (Index No. 54252/21)

[*1]Bank of New York Mellon, etc., respondent,
v
Joseph DeMatteis, etc., et al., appellants, et al., defendants.

APPEAL by the defendants Joseph DeMatteis and Hunter Street Properties, LLC, in an action to foreclose a mortgage, from an order of the Supreme Court (Janet C. Malone, J.), dated December 2, 2021, and entered in Westchester County. The order, insofar as appealed from, denied those branches of those defendants' motion which were pursuant to CPLR 3211(a)(5) to dismiss the first and third causes of action insofar as asserted against them.

Galgano Sharp, LLP, White Plains, NY (Eric R. Sharp of counsel), for appellants.
Woods Oviatt Gilman, LLP, Rochester, NY (David B. Wildermuth of counsel), for respondent.

CONNOLLY, J.

OPINION & ORDER
This appeal requires us to examine whether the stay provided by section 362 of the 1978 Bankruptcy Code (11 USC § 362[a]) operates as a "statutory prohibition" under CPLR 204(a) to toll the statute of limitations to commence a mortgage foreclosure action against a defendant debtor who no longer owns the property that is the subject of the mortgage foreclosure action. We hold that the bankruptcy stay pursuant to subsection 362(a)(1) (see 11 USC § 362[a][1]) tolls the statute of limitations for commencing a mortgage foreclosure action against the defendant debtor, regardless of whether that defendant owns the property at the time of the bankruptcy filing.
This appeal also requires us to determine whether the bankruptcy stay pursuant to subsection 362(a) applies to a nondebtor codefendant to which the defendant debtor transferred the property years before filing for bankruptcy. On the record before this Court, the plaintiff failed to meet its burden of raising a question of fact as to whether the bankruptcy stay applied to the nondebtor codefendant.
I. Factual and Procedural Background
On November 17, 2006, the defendant Joseph DeMatteis executed a note that was secured by a mortgage on certain real property located in Ossining (hereinafter the subject property). In 2012, DeMatteis deeded the subject property to the defendant Hunter Street Properties, LLC (hereinafter Hunter, and together with DeMatteis, the defendants).
On June 19, 2014, the Bank of New York Mellon f/k/a the Bank of New York, as trustee for the certificateholders of the CWABS, Inc., asset-backed certificates, series 2006-23 (hereinafter BONY Mellon), alleging that it was the holder and owner of the note and mortgage, commenced an action against the defendants, among others, to foreclose the mortgage (hereinafter the 2014 foreclosure action). The complaint in the 2014 foreclosure action alleged that DeMatteis defaulted under the terms of the note and mortgage by failing to make the payment due on December [*2]1, 2008, and all subsequent payments thereafter, and the complaint elected to call due the entire unpaid balance. Thereafter, BONY Mellon moved in the 2014 foreclosure action for an order of reference, and Hunter cross-moved to dismiss the complaint insofar as asserted against it for lack of personal jurisdiction. Following a hearing, the Supreme Court held that BONY Mellon failed to establish by a preponderance of the evidence that Hunter was properly served with process, and granted Hunter's cross-motion to dismiss the complaint in the 2014 foreclosure action insofar as asserted against it. By order dated March 15, 2018, the court dismissed the 2014 foreclosure action based on BONY Mellon's failure to prosecute.
On October 20, 2020, DeMatteis filed a voluntary chapter 7 petition in bankruptcy in the United States Bankruptcy Court for the District of Arizona (hereinafter the bankruptcy proceeding). DeMatteis asserted in his bankruptcy petition that he did not have a legal or equitable interest in any real property as of October 20, 2020. The bankruptcy petition further provided that DeMatteis lived in Arizona. Neither the note nor the mortgage were listed on the bankruptcy petition. On February 2, 2021, DeMatteis received a discharge in the bankruptcy proceeding. The bankruptcy proceeding was closed on February 11, 2021.
By summons and complaint filed on April 8, 2021, the plaintiff, the Bank of New York Mellon, f/k/a the Bank of New York as trustee for registered holders of CWABS, Inc., asset-backed certificates, series 2006-23, alleging, inter alia, that it was the owner and holder of the note and mortgage, commenced this action against the defendants, among others [FN1]. The first cause of action alleged, among other things, that DeMatteis failed to repay the installment payment due on August 1, 2015, and subsequent payments, and that a principal balance of $485,618.82, together with accrued interest from July 1, 2015, and certain costs, expenses, taxes, charges, and fees, were due and owing. The first cause of action sought to foreclose the mortgage. The second cause of action sought reformation of the legal description of the subject property in the mortgage, and the third cause of action sought, inter alia, to quiet title to the subject property [FN2]. The defendants interposed an answer, asserting various affirmative defenses, including that the action was barred by the statute of limitations.
The defendants moved pursuant to CPLR 3211(a)(5) to dismiss the complaint insofar as asserted against them as time-barred. Among other things, the defendants contended that BONY Mellon accelerated the loan in the complaint for the 2014 foreclosure action, and therefore, the six-year statute of limitations for this foreclosure action began to run when BONY Mellon commenced the 2014 foreclosure action. As this action was commenced in April 2021, the defendants contended that it was untimely.
The plaintiff opposed the defendants' motion, contending that the statute of limitations to commence this action against DeMatteis and Hunter was tolled. First, the plaintiff contended that the statute of limitations was tolled by a series of executive orders issued by then-Governor Andrew Cuomo in response to the COVID-19 pandemic (see Executive Order [A. Cuomo] Nos. 202.8 [9 NYCRR 8.202.8], 202.14 [9 NYCRR 8.202.14], 202.28 [9 NYCRR 8.202.28], 202.38 [9 NYCRR 8.202.38], 202.48 [9 NYCRR 8.202.48], 202.55 [9 NYCRR 8.202.55], 202.55.1 [9 NYCRR 8.202.55.1], 202.60 [9 NYCRR 8.202.60], 202.63 [9 NYCRR 8.202.63], 202.67 [9 NYCRR 8.202.67], 202.72 [9 NYCRR 8.202.72]) (hereinafter collectively the COVID-19 executive orders). The plaintiff further contended that the statute of limitations was tolled by the automatic bankruptcy stay of subsection 362(a) of the 1978 Bankruptcy Code (see 11 USC § 362[a]). According to the plaintiff, this action was timely based upon the collective effect of the tolls pursuant to the COVID-19 executive orders and the automatic bankruptcy stay.
In the reply affirmation of their attorney, the defendants contended, inter alia, that the automatic bankruptcy stay did not toll the statute of limitations to commence this action because DeMatteis did not own the subject property at the time he filed his bankruptcy petition, and, as such, [*3]the subject property was not a part of the bankruptcy estate. The defendants further contended that, even if the automatic bankruptcy stay tolled the statute of limitations to commence the action against DeMatteis, it did not toll the statute of limitations to commence the action against Hunter because Hunter did not file for bankruptcy.
In an order dated December 2, 2021, the Supreme Court, among other things, granted that branch of the defendants' motion which was to dismiss the second cause of action, for reformation of the mortgage, insofar as asserted against them. However the court denied those branches of the defendants' motion which were to dismiss the remainder of the complaint insofar as asserted against them. The court did not address the effect of the COVID-19 executive orders or the automatic bankruptcy stay. Instead, the court held, inter alia, that, because the 2014 foreclosure action had been dismissed for lack of personal jurisdiction against Hunter, that action had not been commenced against Hunter, the debt had not been accelerated against Hunter, and the statute of limitations had not started to run. The court also held, in effect, that, because the 2014 foreclosure action had been discontinued against DeMatteis due to failure to prosecute, the statute of limitations had not started to run as against him. The defendants appeal. We modify.
II. Standard for CPLR 3211(a)(5) Motions
"A party may move for judgment dismissing one or more causes of action asserted against it on the ground that the cause of action may not be maintained because of the statute of limitations" (HSBC Bank USA, N.A. v Francis, 214 AD3d 58, 60-61; see CPLR 3211[a][5]). "'On a motion to dismiss a complaint pursuant to CPLR 3211(a)(5) on the ground that the statute of limitations has expired, the moving defendant must establish, prima facie, that the time in which to commence the action has expired'" (HSBC Bank USA, N.A. v Francis, 214 AD3d at 61, quoting Cadlerock Joint Venture, L.P. v Trombley, 189 AD3d 1157, 1158). "'If the defendant satisfies this burden, the burden shifts to the plaintiff to raise a question of fact as to whether the statute of limitations was tolled or otherwise inapplicable, or whether the plaintiff actually commenced the action within the applicable limitations period'" (HSBC Bank USA, N.A. v Francis, 214 AD3d at 61, quoting Barry v Cadman Towers, Inc., 136 AD3d 951, 952).
III. The Effect of the 2014 Foreclosure Action
Pursuant to CPLR 213(4), an action to foreclose a mortgage is subject to a six-year statute of limitations (see Bank of N.Y. Mellon v Stewart, 216 AD3d 720; GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d 915, 916). "'When a mortgage is payable in installments, which is the typical practice, an acceleration of the entire amount due begins the running of the statute of limitations on the entire debt'" (Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d 142, 146, quoting Deutsche Bank Trust Co. Ams. v Marous, 186 AD3d 669, 670). Among other ways, acceleration occurs when the plaintiff in a foreclosure action elects in the complaint to call due the entire amount secured by the mortgage (see Freedom Mtge. Corp. v Engel, 37 NY3d 1, 22; GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d at 916; Ditech Fin., LLC v Connors, 206 AD3d 694, 697). Under the recently enacted Foreclosure Abuse Prevention Act (L 2022, ch 821; hereinafter FAPA), which amended CPLR 213(4), where, as here, the statute of limitations is raised as a defense in a mortgage foreclosure action, "'and if that defense is based on a claim that the instrument at issue was accelerated prior to, or by way of commencement of a prior action, a plaintiff shall be estopped from asserting that the instrument was not validly accelerated, unless the prior action was dismissed based on an expressed judicial determination, made upon a timely interposed defense, that the instrument was not validly accelerated'" (GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d at 916-917, quoting CPLR 213[4][a]).
Here, in support of their motion, the defendants demonstrated that the complaint in the 2014 foreclosure action called due the entire debt. The 2014 foreclosure action was dismissed against Hunter for lack of personal jurisdiction and was dismissed against DeMatteis for failure to prosecute. Because the 2014 foreclosure action was not dismissed "based on an expressed judicial determination, made upon a timely interposed defense, that the instrument was not validly accelerated" (CPLR 213[4][a]), the plaintiff is estopped from asserting that the debt was not validly accelerated by the commencement of the 2014 foreclosure action (see id.; Bank of N.Y. Mellon v Stewart, 216 AD3d 720; GMAT Legal Title Trust 2014-1 v Kator, 213 AD3d at 917). We note, in any event, that even prior to the enactment of FAPA, contrary to the Supreme Court's determination, the fact that the complaint in the 2014 foreclosure action was dismissed insofar as asserted against Hunter for failure to effectuate personal service upon it does not invalidate the election of BONY Mellon to exercise its right to accelerate the maturity of the underlying debt (see Federal Natl. Mtge. [*4]Assn. v Woolstone, 196 AD3d 548, 549). Similarly, the dismissal of the complaint in the 2014 foreclosure action insofar as asserted against DeMatteis for failure to prosecute did not revoke the acceleration of the debt (see Kashipour v Wilmington Sav. Fund Socy., FSB, 144 AD3d 985, 987; EMC Mtge. Corp. v Patella, 279 AD2d 604, 606).
Thus, the defendants, established, prima facie, that the instant action, which was commenced more than six years after the complaint in the 2014 foreclosure action accelerated the debt, was untimely (see HSBC Bank USA, N.A. v Francis, 214 AD3d at 61; Wilmington Sav. Fund Socy., FSB v 117 Pulaski, LLC, 197 AD3d 686, 687). With the defendants having satisfied their initial burden of proof as to the untimeliness of this action, "the burden shifted to the plaintiff to raise a question of fact as to whether the statute of limitations was tolled or otherwise inapplicable, or whether the plaintiff actually commenced the action within the applicable limitations period" (HSBC Bank USA, N.A. v Francis, 214 AD3d at 61; see Wilmington Sav. Fund Socy., FSB v 117 Pulaski, LLC, 197 AD3d at 687).
The plaintiff argues that the statute of limitations within which it was required to commence this action against DeMatteis and Hunter was tolled by the collective effect of the COVID-19 executive orders and the automatic bankruptcy stay. We address those contentions as alternative grounds for affirmance (see Parochial Bus Sys. v Board of Educ. of City of N.Y., 60 NY2d 539).
IV. The COVID-19 Executive Orders Tolled the Statute of Limitations to Commence this Action Against Both DeMatteis and Hunter
First, as this Court held in Brash v Richards (195 AD3d 582), Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), which was signed by then-Governor Andrew Cuomo in response to the COVID-19 pandemic, constituted a toll of the filing deadlines applicable to litigation in New York courts (see McLaughlin v Snowlift, Inc., 214 AD3d 720, 721; Murphy v Harris, 210 AD3d 410; Matter of Roach v Cornell Univ., 207 AD3d 931, 933). This toll was extended through several subsequent executive orders, the last of which remained in effect until November 3, 2020 (see Executive Order [A. Cuomo] Nos. 202.14 [9 NYCRR 8.202.14], 202.28 [9 NYCRR 8.202.28], 202.38 [9 NYCRR 8.202.38], 202.48 [9 NYCRR 8.202.48], 202.55 [9 NYCRR 8.202.55], 202.55.1 [9 NYCRR 8.202.55.1], 202.60 [9 NYCRR 8.202.60], 202.63 [9 NYCRR 8.202.63], 202.67 [9 NYCRR 8.202.67], 202.72 [9 NYCRR 8.202.72]). Thus, due to the tolling provision of the COVID-19 executive orders, the statute of limitations within which the plaintiff was required to commence this action was tolled between March 20, 2020, and November 3, 2020 (see McLaughlin v Snowlift, Inc., 214 AD3d at 721; Brash v Richards, 195 AD3d 582).
On March 20, 2020, the plaintiff still had 91 days left on the statute of limitations. Accordingly, when the statute of limitations began to run again, the plaintiff had 91 days, or until February 2, 2021, to commence this action. As the plaintiff did not commence this action until April 8, 2021, this action would still be untimely, unless the plaintiff raised a question of fact as to whether the automatic bankruptcy stay also tolled the statute of limitations.
V. The Automatic Bankruptcy Stay Tolled the Statute of Limitations to Commence This Action Against DeMatteis But Not Hunter
We agree with the plaintiff that the automatic bankruptcy stay tolled the statute of limitations to commence this action against DeMatteis. However, we reach a different conclusion with respect to Hunter.
Section 362 of the 1978 Bankruptcy Code provides that the filing of a bankruptcy petition operates as an automatic stay of certain prescribed actions (see 11 USC § 362[a]; Carr v McGriff, 8 AD3d 420, 422; 3 Collier on Bankruptcy ¶ 362.01 [16th ed 2023]). Subsection 362(a)(1) prohibits the "commencement or continuation" of a judicial action or proceeding "against the debtor that was or could have been commenced before the commencement of [the bankruptcy proceeding], or to recover a claim against the debtor that arose before the commencement of [the bankruptcy proceeding]" (11 USC § 362[a][1]; see In re Fogarty, 39 F4th 62, 72 [2d Cir 2022]; In re Ebadi, 448 BR 308, 313 [Bankr ED NY 2011]; see also Lubonty v U.S. Bank N.A., 34 NY3d 250, 255). In addition, subsection 362(a)(3) prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" (11 USC § 362[a][3]), subsection 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate" (id. § 362[a][4]), and subsection 362(a)(5) prohibits "any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the [bankruptcy proceeding]" (id. § 362[a][5]). The automatic stay is [*5]effective immediately upon the filing of the bankruptcy petition, without further action (see Carr v McGriff, 8 AD3d at 422).
"The effects of [the automatic] stay are wide-ranging and limit virtually all judicial action against the debtor and any codebtors: The automatic stay is designed to provide blanket relief from creditor action and any exceptions from the stay are narrowly written and strictly construed" (Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d at 146 [citations and internal quotation marks omitted]; see Lubonty v U.S. Bank N.A., 34 NY3d 250, 258). The automatic bankruptcy stay of 11 USC § 362 operates as a "statutory prohibition" under CPLR 204(a), which tolls the limitations period for commencement of an action, including foreclosure actions (see Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d at 147; Mercury Capital Corp. v Shepherds Beach, 281 AD2d 604, 605).
A. DeMatteis
We start by analyzing whether subsection 362(a)(1), which, among other things, prohibits the "commencement" of an action "against the debtor" (11 USC § 362[a][1]), prohibited the plaintiff from commencing this action against DeMatteis during the time that the bankruptcy stay was in effect. The definition of "debtor" applicable to the Bankruptcy Code means a "person or municipality concerning which a case under this title has been commenced" (id. § 101[13]). DeMatteis, who filed a bankruptcy petition on October 20, 2020, was a "debtor" within the meaning of 11 USC § 362(a).[FN3]
Next, we must determine whether the commencement of this mortgage foreclosure action would have been "against the debtor" within the meaning of subsection 362(a)(1), even though DeMatteis, the debtor, was not the record owner of the subject property at the time he filed for bankruptcy. "The starting point in interpreting a statute is its language, for if the intent of Congress is clear, that is the end of the matter" (Good Samaritan Hospital v Shalala, 508 US 402, 409 [alterations and internal quotation marks omitted]; see Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d at 147; see also Lubonty v U.S. Bank N.A., 34 NY3d at 255; In re Fogarty, 39 F4th at 71). Where the words of the statute are plain and unambiguous, there is no need to resort to legislative history (see Ex parte Collett, 337 US 55, 61; In re Rinegard-Guirma, 2023 WL 5006264, *6-7, 2023 Bankr LEXIS 1955, *16-17 [Bankr D Or, Aug. 4, 2023, No. 22-31651-DWH13]; see also Lynch v City of New York, 35 NY3d 517, 521).
The United States Court of Appeals for the Second Circuit has explained that 11 USC § 362(a)(1) operates as a stay of two categories of actions and proceedings: (1) those "'against the debtor'" or (2) those "'to recover a claim against the debtor'" (In re Fogarty, 39 F4th at 72, quoting 11 USC § 362[a][1]; see In re Colonial Realty Co., 980 F2d 125, 131 [2d Cir 1992]). "[T]he latter category—to recover a claim against the debtor—must encompass cases in which the debtor is not a defendant; it would otherwise be totally duplicative of the former category and pure surplusage" (In re Fogarty, 39 F4th at 72 [internal quotation marks omitted]; see In re Colonial Realty Co., 980 F2d at 131). "By contrast, the former category—actions against the debtor—must encompass actions in which the debtor is a named defendant" (In re Fogarty, 39 F4th at 72 [internal quotation marks omitted]).
In Fogarty, the Second Circuit held that subsection 362(a)(1) was violated by the foreclosure sale of a property when the debtor was named as a defendant in the New York state foreclosure action, even though the debtor only resided in the property and was not the owner of the property (see id. at 68). The Second Circuit rejected the contention that the bankruptcy stay did not apply because the debtor was named as a defendant only as an interested party (see id. at 74). The court explained that section 362(a) does not "inquire into why the debtor was named as a defendant in an action or proceeding" (id.). The court then held that there is a "bright-line rule" that "if the debtor is a named party in a proceeding or action, then the automatic stay imposed by" subsection 362(a)(1) "applies to the continuation of such a proceeding or action" (id. at 76).
Likewise, in other cases determining whether subsection 362(a)(1) stayed the continuation of a foreclosure action or proceeding against the debtor, the decisive factor was whether the debtor was named as a defendant in the foreclosure action or proceeding. For example, in Ebadi, the United States Bankruptcy Court for the Eastern District of New York held that a foreclosure sale [*6]violated subsection 362(a)(1) because the debtor was named as a defendant in the New York state foreclosure action, even though the debtor, who was a guarantor of the relevant debt, had no ownership interest in the property (see In re Ebadi, 448 BR at 311, 311 n 3, 314, 318). By contrast, in a later case, the United States District Court for the Southern District of New York distinguished Ebadi and held that a foreclosure order in a Georgia foreclosure action was not a violation of subsection 362(a)(1) because the debtor was not a party to the foreclosure action (see In re Stillwater Asset Backed Offshore Fund Ltd., 565 BR 42, 49-50 [SD NY 2017]).
We similarly hold that, by its plain language, section 362(a)(1) prohibits commencing an action against the debtor while the stay is in effect, regardless of why the debtor would be named as a defendant in the action. Although Fogarty (39 F4th at 76), Ebadi (448 BR at 313-314), and Stillwater (565 BR at 49-50) all analyzed whether the "continuation" of foreclosure actions violated subsection 362(a)(1), in our view, the reasoning of those cases apply equally to the question of whether the "commencement" of an action "against the debtor" would violate the same subsection of the statute. Indeed, in Lubonty v U.S. Bank N.A., the Court of Appeals held that 11 USC § 362(a)(1) expressly prohibits the "'commencement or continuation'" of any covered action and is a "blanket ban on filing or continuing lawsuits against the debtor" (Lubonty v U.S. Bank N.A., 34 NY3d at 255; see Wells Fargo Bank, N.A. v Newhouse, 218 AD3d 1117). We therefore reject the contention that the bankruptcy stay did not apply to DeMatteis because he had deeded the subject property to Hunter prior to filing for bankruptcy.
Accordingly, we hold that the bankruptcy stay prohibited the plaintiff from commencing this mortgage foreclosure action against DeMatteis beginning on October 1, 2020, when he filed for bankruptcy. Pursuant to 11 USC § 362(c)(2), the stay established by 11 USC § 362(a)(1) continues "until the earliest of . . . the time the case is closed; . . . the time the case is dismissed; or . . . the time a discharge is granted or denied" (id. § 362[c][2] [emphasis added]; see Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d at 149; PSP-NC, LLC v Raudkivi, 138 AD3d 709, 711). Thus, contrary to the plaintiff's contention, the automatic bankruptcy stay continued in effect until February 2, 2021, which was the date that DeMatteis received a discharge, not February 11, 2021, which was the date the bankruptcy proceeding was marked "closed" (see Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d at 149; In re Killmer, 513 BR 41, 50 [Bankr SD NY 2014]).
In sum regarding DeMatteis, the automatic stay pursuant to 11 USC § 362(a)(1) operated as a "statutory prohibition" under CPLR 204(a), and the statute of limitations within which the plaintiff was required to commence this action against DeMatteis was tolled between October 20, 2020, and February 2, 2021 (see 11 USC § 362[a][1]; [c][2]; CPLR 204[a]; Deutsche Bank Natl. Trust Co. v Lubonty, 208 AD3d at 147)[FN4]. On February 2, 2021, the plaintiff had 91 days, or until May 4, 2021, to commence this action against DeMatteis. As such, this action, commenced on April 8, 2021, was timely with respect to DeMatteis.
B. Hunter
Next, we must decide whether the automatic bankruptcy stay pursuant to 11 USC § 362(a) also tolled the statute of limitations to commence this action against Hunter. It is undisputed that Hunter did not file for bankruptcy. It is likewise undisputed that DeMatteis transferred the subject property to Hunter and that Hunter is the subject property's owner of record by virtue of a deed recorded on December 14, 2012. Further, the plaintiff does not allege that DeMatteis ever had a membership interest or any other kind of interest in Hunter, nor is there any indication in the record that DeMatteis had such an interest. Nevertheless, the plaintiff contends that DeMatteis's bankruptcy petition, filed approximately seven years after DeMatteis deeded the subject property to Hunter, triggered the automatic bankruptcy stay and prevented the plaintiff from commencing this action against Hunter.
We start with the principle that the automatic stay provision of subsection 362(a)(1) does not typically protect nondebtor codefendants (see Deutsche Bank Natl. Trust Co. v Karlis, 138 AD3d 915, 917; Katz v Mount Vernon Dialysis, LLC, 121 AD3d 856, 857; Merrill Lynch, Pierce, Fenner & Smith, Inc. v Oxford Venture Partners, LLC, 13 AD3d 89, 89; Rosenbaum v Dane & [*7]Murphy, 189 AD2d 760, 761; Queenie, Ltd. v Nygard Intern., 321 F3d 282, 287 [2d Cir 2003]; Teachers Ins. and Annuity Assn. of Am. v Butler, 803 F2d 61, 65 [2d Cir 1986]; 3 Collier on Bankruptcy ¶ 362.03[3][d] [16th ed 2023]; see also CenTrust Servs. v Guterman, 160 AD2d 416, 418 [a bankruptcy stay does not prevent a plaintiff from proceeding on causes of action against nonbankrupt defendants, which do not involve the bankrupt's property]). Nevertheless, there are limited circumstances under which an automatic stay may be extended to nondebtors (see Doe v Jasinski, 195 AD3d 1399, 1401; Empire Erectors & Elec. Co., Inc. v Unlimited Locations LLC, 102 AD3d 419, 419; Merrill Lynch, Pierce, Fenner & Smith, Inc. v Oxford Venture Partners, LLC, 13 AD3d at 89). Those limited circumstances are usually when a claim against the nondebtor will have an "immediate adverse economic consequence for the debtor's estate" (Queenie, Ltd. v Nygard Intern., 321 F3d at 287; see Doe v Jasinski, 195 AD3d at 1401; Empire Erectors & Elec. Co., Inc. v Unlimited Locations LLC, 102 AD3d at 419; Merrill Lynch, Pierce, Fenner & Smith, Inc. v Oxford Venture Partners, LLC, 13 AD3d at 89). For example, the automatic bankruptcy stay may apply to nondebtors where the action seeks to establish an obligation of which the debtor is a guarantor, a claim against the debtor's insurer, and actions where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant" (Queenie, Ltd. v Nygard Intern., 321 F3d at 288 [internal quotation marks omitted]). The plaintiff in this case, however, has not argued that the automatic bankruptcy stay should apply to Hunter because this action would have had an immediate adverse economic consequence on DeMatteis's bankruptcy estate, and we express no opinion on the merits of such an argument (see generally Doe v Jasinski, 195 AD3d at 1401; Empire Erectors & Elec. Co., Inc. v Unlimited Locations LLC, 102 AD3d at 419; Merrill Lynch, Pierce, Fenner & Smith, Inc. v Oxford Venture Partners, LLC, 13 AD3d at 89).
Instead, the plaintiff contends that the automatic bankruptcy stay tolled the statute of limitations to commence this action against Hunter because the subject property was considered property of the estate under bankruptcy law. Although the automatic bankruptcy stay would have prohibited the plaintiff from commencing an action against Hunter to foreclose on the subject property if the subject property were property of the estate (see 11 USC § 362[a][3], [4]), on this record, the plaintiff has failed to sufficiently raise a question of fact as to whether the subject property was property of the estate.
Pursuant to 11 USC § 541, the commencement of a bankruptcy proceeding creates an estate (see id.). The bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held (id. § 541[a][1]). Congress intended section 541 to be interpreted broadly (see United States v Whiting Pools, Inc., 462 US 198, 205; In re Prudential Lines Inc., 928 F2d 565, 569 [2d Cir 1991]). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541" (Chartschlaa v Nationwide Mut. Ins. Co., 538 F3d 116, 122 [2d Cir 2008] [internal quotation marks omitted]).
Nevertheless, "[p]roperty interests are created and defined by state law" (Butner v United States, 440 US 48, 55). "It is state law that determines whether the debtor's interest in any particular item of property is sufficient to confer a property right on the bankruptcy estate under Section 541(a)" (In re Frederes, 141 BR 289, 291 [Bankr WD NY 1992]; see In re Prudential Lines Inc., 928 F2d at 569)[FN5]. The trustee of a bankruptcy estate can assert no greater property rights than the debtor had on the date the bankruptcy proceeding was commenced (see In re S.W. Bach & Co., 435 BR 866, 878 [Bankr SD NY 2010]; 5 Collier on Bankruptcy ¶ 541.03; see also First Fed. Sav. & Loan Assn. of Rochester v Brown, 86 AD2d 963, 963 [property of the estate does not include property in which the bankrupt has no interest]).
On this record, the plaintiff has failed to raise a question of fact as to whether DeMatteis had a legal or equitable interest in the subject property on October 20, 2020, the date he filed his bankruptcy petition. Although DeMatteis was the record owner of the subject property at one point, the complaint in this action alleged that Hunter was the owner of record by virtue of a [*8]deed recorded on December 14, 2012 [FN6]. The mere fact that DeMatteis owned the subject property approximately seven years before he filed for bankruptcy does not—without more—satisfy the plaintiff's burden of raising a question of fact as to his legal or equitable interest in the subject property at the time the bankruptcy proceeding was commenced (see In re Stillwater Asset Backed Offshore Fund Ltd., 565 BR at 50 [the debtor lost any interest it had in the property at the time it transferred its interest in the property to the unaffiliated third-party, and so a foreclosure order on the property, three years later, did not implicate property of the debtor's bankruptcy estate]; see also Bank of N.Y. v Ortiz, 30 AD3d 551, 551-552 [where the property had been sold at public auction prior to the debtor filing the bankruptcy petition, the debtor had no legal or equitable interest in the property and the property was not included in the bankruptcy estate]; In re Perl, 811 F3d 1120, 1127-1128 [9th Cir 2016] [under California law, entry of judgment and a writ of possession following unlawful detainer proceedings extinguished all legal and equitable interests that the debtor had in the property at issue prior to the filing of the bankruptcy proceeding]; Cook v Huey, 506 BR 174, 176 [ND NY 2013] [valid pre-petition foreclosure sale divested the debtors of any legal or equitable interests they had in the property and so the property was not property of the bankruptcy estate]; Wisotzke v Ontario County, 409 BR 20 [WD NY 2009], affd 382 Fed Appx 99 [2d Cir] [default judgment in in rem tax foreclosure proceeding had effected a transfer of title of the property to the county and the debtor's right to redeem it had expired by the time he filed his bankruptcy petition, and so the property was not part of the debtor's bankruptcy estate]). Section 541 concerns property of the estate as of the date of commencement of the bankruptcy case, not some earlier point in time, and "nothing in section 541 can revest a debtor with property lost prepetition" (5 Collier on Bankruptcy ¶ 541.03; see Matter of Boyd, 11 F3d 59, 60 [5th Cir 1994]; see also Piccolo v Dime Sav. Bank of New York, 145 BR 753, 756 [ND NY 1992] ["The automatic stay simply prohibits further acts. It does not invalidate acts already taken" (internal quotation marks omitted)]; In re Cohoes Indus. Term., Inc., 70 BR 214, 218 [SD NY 1986] ["the automatic stay does not operate to enjoin actions respecting property in which the debtor no longer has an interest at the time of the filing of the petition"], affd sub nom. In re Cohodes Indus. Term. Inc., 831 F2d 283 [2d Cir 1987]).
We similarly reject the plaintiff's contention that it raised a question of fact as to DeMatteis's legal or equitable interest in the subject property at the time the bankruptcy proceeding was commenced merely because DeMatteis was an obligor on the note and the mortgagor on the mortgage. Although there are no allegations regarding the circumstances or terms and conditions of the transfer of the subject property from DeMatteis to Hunter in December 2012, even assuming for purposes of this CPLR 3211(a)(5) motion that DeMatteis remained obligated to repay the underlying debt despite the transfer of the subject property, the plaintiff has not provided any support for the proposition that this obligation alone rendered the subject property part of the estate. Courts in other jurisdictions have rejected similar contentions that the automatic bankruptcy stay applies to property that was not owned by the debtor at the time that the bankruptcy petition was filed merely because the debtor was liable for the indebtedness secured by the property (see In re Geris, 973 F2d 318, 320-321 [4th Cir 1992]; In re Potchen, 2022 WL 4690322, *6, 2022 Bankr LEXIS 2775, *14-15 [Bankr MD Fla, Sept 30, 2022, No. 6:22-BK-1156-TPG]).
For example, in Geris, the United States Court of Appeals for the Fourth Circuit rejected an argument that the bankruptcy stay applied to real property that the debtor no longer owned, even though that property secured the debtor's obligation on a deed of trust (see In re Geris, 973 F2d at 320-321). The court held that even though the debtor had a material interest in having the value of the property maximized when sold at foreclosure, insofar as it bore directly on the size of the deficiency for which he may have been obligated to pay the bank, holding that such an interest was sufficient to invoke the bankruptcy stay would be "cutting off foreclosure rights of secured creditors in any property standing as security for a debt that happened to be guaranteed by a bankrupt" (id. at 321). The court further held that such a result could not "have been an intended function of the automatic stay provision" (id.). We similarly conclude that the interest that [*9]DeMatteis has in seeing the value of the subject property maximized, when it is sold to satisfy the debt, is too attenuated to warrant considering the subject property to be property of DeMatteis's bankruptcy estate (see id.).
We acknowledge that there are circumstances where a debtor may have a legal or equitable interest in property, even when the debtor has transferred title to that property prior to commencing the bankruptcy proceeding. In particular, property of the estate may include a debtor's possessory interest in real property (see Herkimer County Indus. Dev. Agency v Village of Herkimer, 124 AD3d 1298, 1299 [debtor's leasehold interest in property was property of the bankruptcy estate]; In re 48th St. Steakhouse, Inc., 835 F2d 427, 430 [2d Cir 1987] ["(A) mere possessory interest in real property, without any accompanying legal interest, is sufficient to trigger the protection of the automatic stay"]; cf. In re St. Clair, 251 BR 660, 667 [D NJ 2000] ["'property from the estate'" encompasses property in the possession or control of the trustee or the debtor-in-possession, but only to the extent the trustee or debtor-in-possession has a good-faith, colorable claim to possession or control of the property"], affd sub nom. St. Clair v Wood, 281 F3d 224 [3d Cir 2001]). In this case, however, the complaint does not allege that DeMatteis resided in the subject property at the time he filed his bankruptcy petition. In fact, the complaint alleged that the subject property was vacant and abandoned [FN7]. Accordingly, there is no basis to question whether DeMatteis had a possessory interest in the subject property at the time he filed his bankruptcy petition.
It is also true that there are many kinds of legal or equitable interests in real property that a debtor may have, even if the debtor does not have legal title to, or any possessory interest in, that property. For example, in Wells Fargo Bank, N.A. v Newhouse (218 AD3d 1117), the Appellate Division, Fourth Department, determined that the debtor's approximately $7,000 judgment, which was secured by a subordinate lien on the property, was an interest in the property. However, in this case, the plaintiff only points to DeMatteis's status as the mortgagor and the former owner of the subject property to support its claim that the subject property was property of the estate.
We emphasize that, under the procedural posture of this case, the plaintiff had the burden of raising a question of fact as to the applicability of a toll, and hence, the burden of raising a question of fact as to whether the subject property was property of the estate or that the bankruptcy stay otherwise applied. On this sparse record and with no extended argument on many of the relevant legal issues, the plaintiff failed to meet that burden.
Based upon the record and arguments before us, the plaintiff could have commenced this action against Hunter while the bankruptcy stay was in effect without violating the stay, so long as DeMatteis was not named as a defendant (see In re Stillwater Asset Backed Offshore Fund Ltd., 565 BR at 48-49). Accordingly, as the bankruptcy stay triggered by DeMatteis's bankruptcy petition did not prohibit the plaintiff from commencing this foreclosure action against Hunter, it did not operate as a "statutory prohibition" under CPLR 204(a) to toll the statute of limitations to commence this action against Hunter (see CenTrust Servs. v Guterman, 160 AD2d at 418). As described above, with the benefit of the tolls pursuant to the COVID-19 executive orders, the plaintiff had until February 2, 2021, to commence this action against Hunter. Because the plaintiff did not commence this action until April 8, 2021, this action was untimely with respect to Hunter.
VI. Conclusion
In light of the foregoing, the Supreme Court properly denied that branch of the defendants' motion which was to dismiss the first and third causes of action insofar as asserted against DeMatteis. However, the court should have granted that branch of the defendants' motion which was to dismiss those causes of action insofar as asserted against Hunter as untimely.
Accordingly, the order is modified, on the law, by deleting the provision thereof denying that branch of the defendants' motion which was to dismiss the first and third causes of action insofar as asserted against the defendant Hunter Street Properties, LLC, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar [*10]as appealed from.
LASALLE, P.J., CHAMBERS and TAYLOR, JJ., concur.
ORDERED that the order is modified, on the law, by deleting the provision thereof denying that branch of the motion of the defendants Joseph DeMatteis and Hunter Street Properties, LLC, which was to dismiss the first and third causes of action insofar as asserted against the defendant Hunter Street Properties, LLC, and substituting therefor a provision granting that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court

Footnotes

Footnote 1: On this record, BONY Mellon, which commenced the 2014 foreclosure action, appears to have a nearly identical name as the plaintiff in this action. Nonetheless, the parties refer to BONY Mellon as the predecessor in interest of the plaintiff in this action. Accordingly, for purposes of this appeal, this Court will assume that BONY Mellon and the plaintiff are distinct entities.

Footnote 2: The fourth and fifth causes of action sought certain relief as against the defendant New Century Mortgage Corporation, which has not submitted a brief on this appeal.

Footnote 3: 11 USC § 109 sets forth additional requirements for who may be a "debtor" under the Bankruptcy Code. The parties do not raise any contentions indicating that DeMatteis would not meet the definition of a "debtor" under chapter 7 of the Bankruptcy Code.

Footnote 4: For the reasons described above, the COVID-19 executive orders tolled the statute of limitations to commence this action against DeMatteis and Hunter until November 3, 2021. As the plaintiff correctly acknowledges, the period of time that the bankruptcy stay was in effect overlapped for 14 days with the effective period of the COVID-19 executive orders.

Footnote 5: However, whether that state law property interest is included in the property of the debtor's estate is determined by bankruptcy law (see In re Prudential Lines Inc., 928 F2d at 569).

Footnote 6: The plaintiff did not allege that DeMatteis fraudulently conveyed the subject property to Hunter. Further, we note that the Second Circuit has held that fraudulently transferred property is not to be considered property of the estate until it is recovered (see In re Colonial Realty Co., 980 F2d at 131; see also In re Stillwater Asset Backed Offshore Fund Ltd., 565 BR at 47), although other federal circuits hold otherwise (see In re Allen, 768 F3d 274, 281 [3d Cir 2014] [describing circuit split]).

Footnote 7: We note that the record contains affidavits of service which may indicate that some people resided at the subject property, or were at least present at the subject property, in April 2021. However, there is no indication from these affidavits of service—or anything else in the record—that DeMatteis resided at the subject property or otherwise had any possessory interest in the subject property. Further, DeMatteis's bankruptcy petition stated that he lived at an address in Arizona, and further indicated that he had lived at a different address in Arizona between 2016 and 2018.