Finley v Diocese of Brooklyn (2026 NY Slip Op 01183)

Finley v Diocese of Brooklyn

2026 NY Slip Op 01183

Decided on March 4, 2026

Appellate Division, Second Department

Voutsinas, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 4, 2026
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

BETSY BARROS, J.P.
ANGELA G. IANNACCI
HELEN VOUTSINAS
SUSAN QUIRK, JJ.

2023-07015
 (Index No. 508614/22)

[*1]Roland Finley, respondent, 
vDiocese of Brooklyn, etc., et al., appellants, et al., defendants.

APPEAL by the defendants Diocese of Brooklyn and Mary Queen of Heaven Catholic Academy, in an action to recover damages for personal injuries, from an order of the Supreme Court (Laurence L. Love, J.), dated April 17, 2023, and entered in Kings County. The order, insofar as appealed from, denied the motion of the defendant Mary Queen of Heaven Catholic Academy, joined by the defendant Diocese of Brooklyn, pursuant to CPLR 3211(a)(5) to dismiss the amended complaint insofar as asserted against each of them as time-barred.

Scahill Law Group P.C. (Mitchell Dranow, Sea Cliff, NY, of counsel), for appellants.
Morelli Law Firm, PLLC, New York, NY (Sara A. Mahoney of counsel), for respondent.

VOUTSINAS, J.

OPINION & ORDER
This appeal provides this Court with the opportunity to resolve the effect of Governor Andrew Cuomo's pandemic-era executive orders as applied to the revival provision of the Child Victims Act (CVA) (CPLR 214-g) for the purpose of calculating the statute of limitations. For the reasons set forth below, this Court concludes that the executive orders tolled the closing of the CVA revival window, expanding it for the duration of the time the tolls were in effect.
I. Factual and Procedural Background
On March 24, 2022, the plaintiff commenced this action pursuant to the CVA against the defendants Diocese of Brooklyn (hereinafter the Diocese) and Mary Queen of Heaven Catholic Academy (hereinafter the Academy), among others. The plaintiff alleged that, while he was an infant attending school at the Academy, he was sexually abused by his choir teacher on at least 20 separate occasions. On May 9, 2022, the Academy moved pursuant to CPLR 3211(a)(5) and (7) to dismiss the complaint insofar as asserted against it.
On May 25, 2022, the plaintiff filed an amended complaint, alleging that the sexual abuse occurred when he was approximately 11 years old. On June 14, 2022, the Academy moved pursuant to CPLR 3211(a)(5) to dismiss the amended complaint insofar as asserted against it as time-barred. The Academy argued that the revival window of CPLR 214-g closed on August 16, 2021 (since August 14, 2021, was a Saturday), and as such, the action, commenced on March 24, 2022, was time-barred. The Academy contended that the August 3, 2020 legislative amendment that expanded the revival window to August 14, 2021 (hereinafter the CVA amendment) (L 2020, ch 130), meant that the Legislature intended for all CVA actions to be commenced by August 14, 2021. Subsequently, the Diocese joined the Academy's motion.
In opposition, the plaintiff contended that the action was timely because the pandemic-era executive orders served to toll the closing of the CVA revival window. In an order [*2]dated April 17, 2023, the Supreme Court, inter alia, denied the Academy's motion, joined by the Diocese, pursuant to CPLR 3211(a)(5) to dismiss the amended complaint insofar as asserted against each of them as time-barred, concluding that the executive orders created a 228-day toll on the closing of the revival window, extending the plaintiff's time to commence the action.
The Academy and the Diocese now appeal. Their sole contention is that the CVA amendment superseded all of the executive orders, making the amended statutory deadline of August 14, 2021, the last date to commence an action under the CVA.
During the pendency of this appeal, this Court decided Bethea v Children's Vil. (225 AD3d 580) and Chestnut v United Methodist Church (230 AD3d 182). In Bethea, this Court considered whether the CVA amendment superseded the executive orders issued after the CVA amendment's enactment. This Court concluded that it did not, holding that those executive orders tolled the CVA amendment's expanded filing deadline by "at least" 90 days (Bethea v Children's Vil., 225 AD3d at 581; see Chestnut v United Methodist Church, 230 AD3d at 206-207 [reaching the same conclusion]). The Academy and the Diocese note these decisions in their reply brief, but they contend that the action was untimely because it was commenced after the 90 days provided by the post—CVA amendment executive orders, which lapsed on November 12, 2021.
The plaintiff contends that all the executive orders created a total 228-day toll, further expanding the time to commence a CVA action. The plaintiff argues that this is consistent with the Legislature's intent in drafting the revival provision of the CVA and the CVA amendment. The plaintiff further contends that Bethea cannot be read to limit the toll created by the executive orders to only 90 days.II. Discussion
As a threshold matter, it is noted that as of this writing, no New York appellate court has considered the effect of all the executive orders on the amended CVA revival window. This has caused some confusion amongst trial courts (see Paul H. v State of New York, 87 Misc 3d 1207[A], 2025 NY Slip Op 51486[U], *3 [Ct Cl] ["No court has found that the revival window closed on any date after November 12, 2021."]; Matter of M.C. v State of New York, 74 Misc 3d 682, 702 n 20 [Ct Cl]; K.S.D. v Ryan, 2024 WL 180798, *11, 2024 US Dist LEXIS 8300, *30-32 [D NJ, Civil Action No. 21-20270 (RK) (JBD)]). In considering this question, this Court concludes that the executive orders apply to all CVA actions, enlarging the revival window by 228 total days.
A. History of the CVA, Executive Orders, and the CVA Amendment
In recognizing that many child abuse victims could not acknowledge or recognize their trauma for decades, the Legislature created the CVA to accommodate the peculiar disadvantages faced by child sex abuse survivors in pursuing justice (see Bill Jacket, L 2019, ch 11). Survivors were often time-barred by restrictive statutes of limitation and therefore unable to seek justice through the courts (see Letter from Assembly Member Linda B. Rosenthal & Senator Brad Hoylman, Feb. 11, 2019, Bill Jacket, L 2019, ch 11 at 5; see also Senate Introducer's Mem in Support, Bill Jacket, L 2019, ch 11 at 7-8). As a result, the Legislature established a one-year window in which adult survivors of child sexual abuse would be permitted to commence otherwise time-barred civil actions, enacting the CVA on February 14, 2019. The CVA created a one-year window from August 14, 2019, to August 14, 2020, within which previously time-barred civil actions could be commenced by survivors against their alleged abusers (see CPLR former 214-g [L 2019, ch 11, § 3, eff Feb. 14, 2019]).
Shortly after the filing period for CVA actions commenced, concerns arose that survivors were not availing themselves of the revival window. However, beginning in March 2020, survivors faced another obstacle when the COVID-19 pandemic forced disruptions to filings and in-person court appearances. In response to the COVID-19 pandemic, then-Governor Andrew Cuomo issued a series of executive orders that tolled the limitations period for all civil actions in New York. Beginning on March 20, 2020, with Executive Order (A. Cuomo) No. 202.8 (9 NYCRR 8.202.8), in an effort to limit all court operations to essential matters during the COVID-19 pandemic, the time limit for commencement of any legal action, including under the CPLR, was tolled for 30 days.
As the pandemic continued, the Governor issued four additional executive orders, each extending the toll for 30 days (see Executive Order [A. Cuomo] Nos. 202.14 [9 NYCRR 8.202.14] [Apr. 7, 2020], 202.28 [9 NYCRR 8.202.28] [May 7, 2020], 202.38 [9 NYCRR 8.202.38] [June 6, 2020], 202.48 [9 NYCRR 8.202.48] [July 6, 2020]). Though the word "toll" does not appear in every executive order, each subsequent executive order in this series continued the suspensions and modifications of law (see Brash v Richards, 195 AD3d 582, 584).
In addition to this toll on all limitation periods, the Governor used his emergency authority to temporarily modify CPLR 214-g. On May 8, 2020, the Governor expanded the revival window to commence an action under CPLR 214-g from one year and 6 months to one year and 11 months after the effective date of such section (see Executive Order [A. Cuomo] No. 202.29 [9 NYCRR 8.202.29]).
The Legislature subsequently passed the CVA amendment (L 2020, ch 130), which had been proposed in the New York State Senate in January 2020 and further expanded the window to commence CVA actions. The CVA amendment, which was signed into law by the Governor on August 3, 2020, created a two-year total window within which a CVA action could be commenced (see CPLR 214-g).
Two days later, the Governor issued another emergency executive order extending the toll by another 30 days (see Executive Order [A. Cuomo] No. 202.55 [9 NYCRR 8.202.55] [Aug. 5, 2020]). Shortly thereafter, two more executive orders followed, each extending the toll by another 30 days (see Executive Order [A. Cuomo] Nos. 202.60 [9 NYCRR 8.202.60] [Sept. 4, 2020], 202.67 [9 NYCRR 8.202.67] [Oct. 4, 2020]). The Governor subsequently issued one final executive order declaring the toll no longer in effect as of November 4, 2020 (see Executive Order [A. Cuomo] No. 202.72 [9 NYCRR 8.202.72] [Nov. 3, 2020]).
With regard to the executive orders themselves, there was doubt as to whether they were a valid toll on New York actions. In 2021, this Court first held that the series of executive orders were to be considered a toll for filing deadlines applicable to litigation in New York courts (see Brash v Richards, 195 AD3d at 585). This Court has continuously held that the series of executive orders created an aggregate 228-day toll (see McLaughlin v Snowlift, Inc., 214 AD3d 720, 721 [the executive orders applied a 228-day toll to the plaintiff's personal injury action]; see also Wells Fargo Bank, N.A. v Leopold & Assoc., PLLC, 238 AD3d 1195, 1196 ["As a practical matter, the toll served to extend the statute of limitations period" for legal malpractice causes of action "by 228 days from the original deadline"]; Fuhrmann v Town of Riverhead, 230 AD3d 652, 653 [the executive orders "tolled the applicable statute of limitations" for personal injury actions against municipalities "for a 228-day period"]; Matter of Dutra v City of New York, 224 AD3d 682, 683 ["the petitioner demonstrated that the period to timely serve a notice of claim was tolled by the executive orders issued during the COVID-19 pandemic, and began to run on November 4, 2020"]; Bank of N.Y. Mellon v DeMatteis, 222 AD3d 1, 10 [causes of action to foreclose a mortgage and to quiet title were "tolled between March 20, 2020, and November 3, 2020"]; Murphy v Harris, 210 AD3d 410, 411; Matter of Roach v Cornell Univ., 207 AD3d 931).
B. Legal Analysis
In considering the question of whether the executive orders created a 228-day toll on the revival window with regard to CVA actions, this Court first notes that it is not inconsistent with its precedent in Bethea v Children's Vil. (225 AD3d 580) to conclude that they did. As noted, Bethea considered only the applicability of the executive orders issued after the CVA amendment was enacted. Since the complaint in Bethea was filed within the 90-day period after the close of the amended CVA revival window, this Court was not asked to evaluate the effect of the executive orders preceding the CVA amendment (see id. at 581 ["Contrary to the Village's contentions, the executive orders issued subsequent to the CVA's amendment tolled the close of the CVA's revival window for 90 days, from August 14, 2021, until at least November 12, 2021. As the instant action was commenced on November 12, 2021, it was timely commenced" (emphasis added and citations omitted)]; see also Chestnut v United Methodist Church, 230 AD3d at 206-207).
Similarly, other Departments of the Appellate Division have applied the executive orders issued subsequent to the CVA amendment as a 90-day toll on CPLR 214-g. These courts did not address the effect of the preceding executive orders on the CVA amendment (see PB-33 Doe v Rudolph, 229 AD3d 1340, 1342 ["Inasmuch as the instant action was commenced against the Warsaw defendants on October 21, 2021, it was timely commenced."]; Doe v Archdiocese of N.Y., 221 AD3d 451 [action commenced on November 12, 2021], affg 2022 WL 2047203 [Sup Ct, NY County, Index No. 160239/21]). Accordingly, as noted above, the Departments of the Appellate Divisions have yet to consider the applicability of the entire series of executive orders as a toll on the CVA's amended filing deadline.
It is evident that the CVA amendment was intended to enlarge the initial revival window to afford individuals the opportunity to commence these actions. When interpreting the CVA, "the Court's primary consideration is to ascertain and give effect to the intention of the [*3]Legislature" (Matter of Mestecky v City of New York, 30 NY3d 239, 243 [internal quotation marks omitted]). "'[M]eaning and effect should be given to every word of a statute' and . . . an interpretation that renders words or clauses superfluous should be rejected" (id., quoting Leader v Maroney, Ponzini & Spencer, 97 NY2d 95, 104).
In assessing whether the CVA amendment abrogated the effect of the preexisting toll, it should be noted that the plain language of the CVA amendment does not mention any toll that the Legislature knew to be in effect. The language of CPLR 214-g was amended to read that an action may be commenced "not later than two years and six months after the effective date of this section," which was the date of the statute's original enactment in 2019. In light of the absence of any provision mentioning tolls, this Court cannot supply one (see Matter of Diegelman v City of Buffalo, 28 NY3d 231, 237 ["we cannot by implication supply in a statute a provision which it is reasonable to suppose the Legislature intended intentionally to omit because the failure of the Legislature to include a matter within the scope of an act may be construed as an indication that its exclusion was intended" (internal quotation marks omitted)]). As such, this Court holds that the CVA amendment extended the time by which survivors can come forward, enlarging the revival window created by the statute without changing the toll in existence.
Other provisions of the CVA address tolls. For instance, the CVA specifically addresses tolls for infancy, disability, and insanity (see Court of Claims Act § 10[5], [10]; CPLR 208[a], [b]; DiSalvo v Wayland-Cohocton Cent. Sch. Dist., 218 AD3d 1169, 1171). Had the Legislature wanted to expand the revival window and simultaneously overturn the executive orders, it easily could have and surely would have written the statute to say so (see Matter of Theroux v Reilly, 1 NY3d 232, 239).
This Court also notes that the Legislature had the authority under Executive Law § 29-a(4) to address the executive orders as a toll, but it did not. The COVID-19—era executive orders were issued pursuant to the Governor's emergency authority under Executive Law § 29-a to manage state disaster emergencies. Executive Law § 29-a(4) specifically empowers the Legislature to "terminate by concurrent resolution executive orders issued under this section at any time." When the Legislature acts pursuant to this section, it does so expressly and unambiguously (see Education Law § 3604[7] [exempting COVID-19—related school closures from the rule generally requiring 180 in-session days of school per year, superseding Executive Order (A. Cuomo) No. 202.4 (9 NYCRR 8.202.4)]; Business Corporation Law § 708[b] [allowing the written consent of a member of a board of directors to be made electronically for the duration of the pandemic emergency, superseding prior executive orders]; Banking Law § 9-x [adopting and extending the mortgage moratorium imposed by COVID-19 executive orders, citing the executive orders and the COVID-19 pandemic]).
Here, the plain text of the CVA amendment does not impact or nullify any toll and does not refer to the executive orders. The legislative history of the CVA and the CVA amendment clearly shows that the intent of the CVA amendment was to allow survivors more time to come forward.
Indeed, when the Legislature did supersede any provision of an executive order, the Governor recognized it and discontinued that provision by subsequent executive order (see Executive Order No. 202.48 [discontinued the modifications of Education Law § 3604(7), Business Corporation Law § 708, and the mortgage moratorium for residential mortgagees, as these had been "superseded by statute" or "legislation"]). Conspicuously missing from the post—CVA amendment executive orders is any recognition that the Legislature superseded or canceled the toll created by prior executive orders as to the CVA. Considering that the Governor issued Executive Order No. 202.55 two days after signing the CVA amendment into law, it can be concluded that the Governor understood that the Legislature had no intent to overrule any portion of the toll created by the executive orders.
Given these circumstances, this Court concludes that the executive orders issued by the Governor and the Legislature's amendment of the CVA all functioned together to enlarge and enhance the period of time for survivors to commence CVA actions. This Court finds the contention of the Academy and the Diocese that the CVA amendment supplanted the executive orders unpersuasive. The CVA amendment and the executive orders work in tandem to accommodate the peculiar difficulties precluding survivors of child sex abuse to come forward in pursuit of justice. The extended revival window provided survivors an opportunity to avail themselves of the CVA revival window despite restrictions by the pandemic or personal trauma. To hold otherwise would belie the very intent of the CVA, which was to permit victims additional time to bring their offenders [*4]to justice.
Accordingly, this Court holds that the executive orders issued prior to the enactment of the CVA amendment apply to toll the two-year revival window for the time the executive orders were in effect. In conjunction with the executive orders issued subsequent to the CVA amendment's enactment, which this Court has recently held to be applicable, all of these executive orders impose an aggregate 228-day toll on the closing of the CVA revival window, making March 30, 2022, the latest date by which to commence a CVA action (see Friedman v Bartell, 2025 WL 1681607, *1, 2025 US App LEXIS 14754, *3 [2d Cir, No. 24-256-cv] ["That [CVA] revival window, however, closed no later than March 30, 2022"], citing Bethea v Chilren's Vil., 225 AD3d 580, and McLaughlin v Snowlift, Inc., 214 AD3d 720).III. Conclusion
Therefore, the Academy's motion, joined by the Diocese, pursuant to CPLR 3211(a)(5) to dismiss the amended complaint insofar as asserted against each of them as time-barred was properly denied. Accordingly, the order is affirmed insofar as appealed from.
BARROS, J.P., IANNACCI and QUIRK, JJ., concur.
ORDERED that the order is affirmed insofar as appealed from, with costs.
ENTER:
Darrell M. Joseph
Clerk of the Court